IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GIRIJA NAIR,                               :

        Plaintiff,                 :          Case No. 2:02-cv-595

      v.                                  :          Judge Holschuh

COLUMBUS STATE COMMUNITY           :          Magistrate Judge King
COLLEGE,
                                :

        Defendant.                 :

                                :

## MEMORANDUM OPINION AND ORDER

Plaintiff Girija Nair filed this suit against Defendant Columbus State Community College alleging national origin discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff claims that Defendant refused to renew her teaching contract and altered the terms and conditions of her employment due to her Indian national origin. This matter is currently before the Court on the parties' respective Second Motions in Limine (Doc. #s 100, 102), as well as the parties' respective Objections to proposed exhibit lists (doc. #s 97, 98).

## I.      Applicable Legal Standard

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorize the Court to rule on an evidentiary motion in limine, the Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion in limine is to allow the Court to rule on issues pertaining to evidence in advance of trial in order to both avoid delay and ensure an evenhanded and expeditious trial. See Indiana Ins. Co. v. Gen. Elec. Co., 326 F.Supp.2d 844, 846 (N.D. Ohio 2004) (citing Jonasson v.

Lutheran Child & Family Servs., 115 F.3d 436, 440 (7th Cir. 1997)).  Pretrial orders also often save the parties time and cost in preparing for trial and presenting their cases.

Courts are generally reluctant to grant broad exclusions of evidence in limine, however, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." Koch v. Koch Indus., Inc., 2 F.Supp.2d 1385, 1388 (D. Kan. 1998); accord Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975).  A court should not make a ruling in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible. Indiana Ins. Co., 326 F.Supp.2d at 846; Koch, 2 F.Supp.2d at 1388.  If this high standard is not met, evidentiary rulings should be deferred so that the issues may be resolved in the context of the trial. Indiana Ins. Co., 326 F.Supp.2d at 846.  Ultimately, whether a motion in limine is granted or denied is a matter left to the sound discretion of the Court. See Hesling v. CSX Transp., Inc., 396 F.3d 632, 643-44 (5th Cir. 2005) (citing United States v. Sharpe, 193 F.3d 852, 867 (5th Cir. 1999); Buford v. Howe, 10 F.3d 1184, 1188 (5th Cir. 1994)).

## II.    Motions in Limine

Although Defendant argues that the Motions in Limine and Objections cannot be ruled on until the evidence is presented in the context of the trial (Def. Resp. p. 4, doc. # 106), that argument frustrates the entire purpose of allowing the parties to file additional motions in limine and to object to the proposed exhibit lists.  The parties submitted fairly extensive exhibits lists and stated that they expected a lengthy trial: the Court thus allowed additional motions in limine and objections to resolve as many issues as possible before trial.  Where it is necessary to reserve ruling the Court will do so, but otherwise the Court prefers to resolve these issues now.

### A.    Defendant's Motion

2

Defendant's second Motion in Limine (doc. # 100) asks the Court to exclude evidence relating to various different topics, mostly in the form of witness testimony.  Plaintiff has responded to Defendant's Motion.  (Doc. # 107.)

### 1.    Testimony from Hareendra Varma and Dr. Marian Adomakoh

Defendant argues that Plaintiff should not be allowed to call these two witnesses, as Defendant states their testimony will be irrelevant.  (Def. 2d Mot. in Lim. p. 1-2, doc. # 100.) Plaintiff responds that Varma's testimony will be relevant to Plaintiff's damages, and that Dr. Adomakoh's testimony is relevant because it relates to past instances in which Defendant's employees discriminated based on national origin.  (Pl. Resp. p. 1, doc. # 107.)  The Court has previously granted Plaintiff's motion to take trial telephone depositions of these two witnesses, but then ordered Plaintiff to submit copies of these depositions to the Court as soon as practicable to allow the Court to ascertain the evidence's relevance.  (Doc. # 104.)  The Court still believes that course to be the best method of proceeding, and consequently reserves ruling on the admissibility of these witnesses' testimony until the Court is able to review the copies of the depositions.

### 2.    Testimony from Dr. Josephine Wilson

Defendant argues that Dr. Wilson's testimony is irrelevant to this case.  Dr. Wilson is a representative of the American Association of University Professors, a national organization that advocates for the rights of academic faculty members, and Defendant argues that she has no first hand knowledge of the events in this case and is not an expert in Defendant's policies or procedures. Defendant also argues that, if her testimony is relevant, admitting it would create a danger of unfair prejudice due to juror confusion and wasting time.  (Def. 2d Mot. in Lim. p. 3, doc. # 100.)  Plaintiff responds by arguing that Dr. Wilson "wrote a number of letters to Dr. Moeller [Defendant's

president]" opining that Defendant violated procedural due process standards when handling the decision to not renew Plaintiff's contract.  Plaintiff argues that this testimony is relevant because evidence that Dr. Moeller ignored procedural irregularities and unfair treatment is evidence that Defendant's asserted legitimate, non-discriminatory reasons for not renewing Plaintiff's contract is pretextual.  (Pl. Resp. p. 2, doc. # 107.)

The Court cannot resolve this dispute without hearing Dr. Wilson's testimony.  Evidence concerning the recommended best practices and procedures for handling faculty issues, such as Plaintiff's, would help the jury determine if there were procedural irregularities in how Defendant handled Plaintiff's case.  If Plaintiff can in fact show that Dr. Moeller had constructive or actual knowledge of the American Association of University Professors' recommended procedures and elected to ignore those procedures when deciding to not renew Plaintiff's contract, that would be relevant to the question of pretext.

This is not to say, however, that Dr. Wilson will necessarily be permitted to testify as to her opinion that Defendant violated these standards.  It would be up to the jury to decide that question. But, without hearing the entirety of Dr. Wilson's testimony, the Court cannot now rule on whether her testimony will be admissible or inadmissible.  The Court reserves ruling on the admissibility of Dr. Wilson's testimony.

### 3.    Plaintiff's Proposed Exhibit 84

Plaintiff's proposed Exhibit 84 is an Ohio Civil Rights Commission decision finding that it is probable that Defendant retaliated against Plaintiff.  Defendant objects because the Court has previously excluded another OCRC probable cause determination (see Mem. Op. and Order p. 8-10, doc. # 95), and asks the Court to exclude Plaintiff's proposed Exhibit 84.  (Def. 2d Mot. in Lim. p.

3-4, doc. # 100.)  Plaintiff agrees that Exhibit 84 should not be admitted.  (Pl. Resp. p. 2, doc. # 107.)
Defendant's Motion is **GRANTED** as to Plaintiff's proposed Exhibit 84.

### 4.      Discriminatory Comments from Michelle Branner

Plaintiff has alleged that Michelle Branner, one of Plaintiff's colleagues in the
Developmental Education Department (DED), made remarks to her indicating that Branner was
biased against Plaintiff on account of Plaintiff's national origin.  Defendant argues that any attempt
by Plaintiff to relate these remarks during Plaintiff's testimony would be hearsay and should be
prohibited.  (Def. 2d Mot. in Lim. p. 4, doc. # 100.)  Plaintiff responds by arguing that the remarks
fall within Rule 803(3)'s exception to the hearsay rule for statements revealing a then-existing state
of mind, and are probative on Plaintiff's contention that Branner's later act of advocating for
Plaintiff's removal was motivated by a biased attitude as opposed to a legitimate, non-discriminatory
reason.  (Pl. Resp. p. 2, doc. # 107.)

The Court agrees with Plaintiff.  These statements reveal Branner's state of mind when
making the remarks; they are not being offered to prove that Indians do in fact "eat with their hands"
or that Hindu beliefs are false, but are offered as evidence of a discriminatory mindset.  As such the
statements are not hearsay within the definition of Rule 801(c) because they are not offered for the
truth of the matter asserted.  The statements would be relevant to Plaintiff's argument that the
departmental faculty who advocated for Plaintiff's removal, one of whom was Branner, were
motivated by discriminatory attitudes rather than legitimate reasons.  Any doubts as to the reliability
of the statements or to any prejudice that might result to Defendant are ameliorated by the fact that
Branner will be called to testify by Defendant and can, under oath, present her version of her
interactions with Plaintiff.  The jury will be able to adequately resolve any issues of witness

credibility that these contested statements will present.  Defendant's Motion is **DENIED** as to Branner's statements.

### 5. Dr. Simmons' Statements Concerning Viola Newton

Dr. Alphonso Simmons, Defendant's Equal Employment Opportunity Officer, allegedly told Plaintiff about a former DED Chairwoman, Viola Newton, who was accused of sexual harassment and forced out of the department.  Defendant argues that Plaintiff should be precluded from presenting any testimony about this incident because it is not relevant to Plaintiff's national origin discrimination claim, and because Plaintiff's counsel previously agreed not to introduce this testimony.  (Def. 2d Mot. in Lim. p. 4, doc. # 100.)  Plaintiff states that she "does not at the present time intend to offer into evidence the statement about Dr. Newton to which [d]efendant objects" (Pl. Resp. p. 3, doc. # 107), and the Court agrees that this is the best course of action.  A prior instance of sexual harassment would have no relevance to a claim of national origin discrimination.  Defendant's Motion is **GRANTED** as to Dr. Simmons' comments concerning Newton.

### 6. David Hall's Alleged Statements

Plaintiff asserts that David Hall, another professor in Plaintiff's department, stated to her that he had been subjected to discrimination by other faculty members and sympathized with what Plaintiff alleges she was experiencing.  Defendant seeks to preclude Plaintiff from testifying about these alleged statements because Defendant argues it would not be relevant, and because it is hearsay.  (Def. 2d Mot. in Lim. p. 5, doc. # 100.)  Plaintiff responds by arguing that Hall's statements are relevant because they are circumstantial evidence of discrimination, and because they would help to discredit Hall's later decision to advocate for Plaintiff's termination.  (Pl. Resp. p. 3, doc. # 107.)  Plaintiff does not, however, offer a response to Defendant's hearsay argument.

Hall's statements would be relevant under Federal Rule of Evidence 401's broad definition of relevance, but if Plaintiff attempted to relate them when testifying they would be hearsay because they would be offered to show that members of the DED did in fact discriminate, and Plaintiff offers no argument that they fall within any exception to the hearsay rule. Plaintiff can certainly use Hall's prior statements for impeachment purposes pursuant to Rule 613, but that does not mean that the statements can be admitted as substantive evidence through Plaintiff's testimony, as opposed to Hall's testimony. Unless Plaintiff is able to articulate some basis for avoiding the hearsay rule, Defendant's Motion is **GRANTED** as to Plaintiff testifying as to Hall's statements.

### 7. Larry Lance's Alleged Statements

Larry Lance, the Chair of Defendant's Mathematics Department (not the DED, the department Plaintiff worked in), wrote a letter to Tom Erney, Defendant's Director of Instructional Services, criticizing Plaintiff's teaching skills and conduct while teaching a course in his department. While Plaintiff's Second Motion in Limine seeks to exclude Lance's letter and accompanying testimony entirely, see infra. section II.B.1, Defendant seeks to exclude Plaintiff's testimony that Lance, after writing this letter, told Plaintiff that Erney had forced Lance to write the letter. Defendant argues that Plaintiff's anticipated testimony would be hearsay. (Def. 2d Mot. in Lim. p. 5, doc. # 100.) Plaintiff argues that she must be able to impeach Lance's testimony, should it be allowed, by questioning him about his reasons for criticizing Plaintiff. (Pl. Resp. p. 4, doc. # 107.) Plaintiff can indeed seek to impeach Lance with his prior inconsistent statements pursuant to Rule 613 should the Court hear Lance's testimony, see infra. section II.B.1, but that does not mean that Plaintiff herself can testify as to Lance's hearsay statements and have that testimony admitted as substantive evidence, unless Plaintiff can present some way to avoid the hearsay bar. Plaintiff has

7

not done so, and Defendant's Motion is **GRANTED** as to Lance's alleged statements to Plaintiff if offered by Plaintiff on direct examination.

### 8. Request for Voir Dire of Witnesses

Defendant requests the right to voir dire some of Plaintiff's witnesses, such as Karl Rieppel and Professor Scoville, to determine if these witnesses have relevant information to offer. (Def. 2d Mot. in Lim. p. 5-6, doc. # 100.) Plaintiff argues that both Rieppel's and Scoville's testimony will be relevant, but after arguing that Plaintiff also has doubts about the relevancy of some of Defendant's witnesses Plaintiff states she "would agree to both parties' conducting minimal voir dire to ascertain the testimony of certain witnesses." (Pl. Resp. p. 4, doc. # 107.)

The Court, however, is reluctant to allow the parties to conduct voir dire of an unknown number of potential witnesses. If the parties had questions about the relevancy of any prospective witness' testimony, the parties could have resolved such a question in advance of trial through either depositions or by specifically objecting to such testimony in either the party's first or second motion in limine. Absent a showing that a proposed witness has absolutely no relevant testimony to offfer - a showing that would be a representation to the Court that must be made in good faith and with some basis in fact - the Court will not permit an unknown number of assorted witnesses to be examined and cross-examined twice. Defendant's request to voir dire some of Plaintiff's witnesses, and Plaintiff's suggestion that both sides should be allowed to voir dire witnesses, are **DENIED**.

### 9. Celeste Bland's Alleged Conflicts with Departmental Faculty and Administration

During depositions Plaintiff's counsel questioned Celeste Bland, who recommended Plaintiff's termination and was Chair of the DED, about disputes and conflicts Bland had with other members of the DED faculty and Defendant's administration. Defendant argues that such testimony

8

is irrelevant to Plaintiff's national origin discrimination claim, and that if it is relevant, its probative value would be outweighed by a danger of unfair prejudice.  (Def. 2d Mot. in Lim. p. 6, doc. # 100.)  Plaintiff, however, makes a convincing case that such evidence is relevant.  If a large number of faculty and administration members had problems and disputes with Bland similar to those that Plaintiff had, and if Bland did not recommend terminating any of those individuals, that is evidence that Plaintiff, the only individual of Indian national origin in the DED, was treated differently than other similarly situated employees.  This is relevant evidence of pretext.  The Court does not see any danger of unfair prejudice to Defendant by admitting this evidence - "[u]nfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to . . . evidence [that] tends to suggest [a] decision on an improper basis."  United States v Caver, 470 F.3d 220, 240 (6th Cir. 2006).  Defendant does not explain how this evidence would tend to suggest a decision on an improper basis.  Defendant's motion is **DENIED** as to evidence of Bland's alleged conflicts with departmental faculty members and the administration.

### 10.    "National Origin Discrimination in the Post-9/11 World"

Defendant moves to preclude "any reference to national origin discrimination in this post-9/11 world" because it could unfairly prejudice the parties.  (Def. 2d Mot. in Lim. p. 6, doc. # 100.)  Any argument to the jury or evidence based on xenophobic or nationalistic fears of individuals of different national origin would, of course, be unduly prejudicial and excludable.  Defendant's Motion is **GRANTED** as to this evidence.

### B.    Plaintiff's Motion

Plaintiff asks the Court to exclude three main categories of evidence.

9

### 1.     Testimony from Larry Lance

As noted above when discussing Defendant's Second Motion in Limine, see supra section II.A.7, Larry Lance, the Chair of Defendant's Mathematics Department (not the department Plaintiff worked in), wrote a letter to Tom Erney, Defendant's Director of Instructional Services, criticizing Plaintiff's teaching skills and conduct while teaching a course in his department.  Plaintiff moves to exclude this letter and to preclude Lance from testifying at trial because his testimony is allegedly irrelevant.  Plaintiff argues that Lance, as a member of a different academic department than Plaintiff, played no role in the decision to not renew Plaintiff's contract, and that Dr. Moeller, the ultimate decisionmaker in this case, did not rely on Lance's letter when making the ultimate employment decision, making Lance's testimony completely irrelevant.  (Pl. 2d Mot. in Lim. p. 2-5, doc. # 102.)  Defendant responds by arguing that Dr. Moeller did in fact rely on Lance's information when deciding to not renew Plaintiff's contract, and that his testimony is relevant because it supports Defendant's asserted legitimate, non-discriminatory reasons for not renewing Plaintiff's contract. (Def. Resp. p. 2-3, doc. # 106.)

Plaintiff is correct that, when explaining her reasoning at the time she actually made the decision to not renew Plaintiff's contract, Dr. Moeller never explicitly referenced relying on information from Lance.  Dr. Moeller's letter to Plaintiff, written on March 12, 2001, references information from the departmental faculty and a discussion with the chair of the Disciplinary Review Committee, as well as a general reference to "all of the evidence."  Dr. Moeller's letter to the Disciplinary Review Committee, also written on March 12, 2001, explaining her decision references the same information, as well as general references to "the record" and "the evidence of the case." (Def. Proposed Ex. 114, 115.)  Dr. Moeller's affidavit, which was attached to Defendant's

summary judgment motion and which was sworn on July 17, 2003, however, states that she relied on the information from the departmental faculty and her discussion with the Committee chair, and also states that Dr. Moeller reviewed Plaintiff's disciplinary record when deciding to not renew Plaintiff's contract.  (Def. Mot. Summ. J. app. C, doc. # 54.)  It was not until Dr. Moeller's deposition on March 2, 2007 that she explicitly stated that she relied on Lance's information when making the ultimate employment decision.  Plaintiff argues that this deposition testimony is wholly unreliable because the statements were made during litigation and conflict with the prior statements made closer in time to Dr. Moeller's actual decision.  (Pl. 2d Mot. in Lim. p. 4, doc. # 102.) Defendant, however, contends that Dr. Moeller's deposition testimony is not contrary to her earlier statements, because Dr. Moeller's earlier statements made general references to reviewing "all of the evidence" and Plaintiff's disciplinary record, which Defendant argues encompass Lance's information.

The Court is not able to resolve this issue at this time.  If Lance's information was truly important to Dr. Moeller's decision, it is reasonable to think that she would have mentioned it in her earlier statements made closer in time to her actual decision.  The fact that Dr. Moeller did not state that she relied on Lance's information until her deposition was taken, 6 years after she made the decision in question, is troubling and indicates that Lance's information may *not* have played an important role in Dr. Moeller's decisionmaking.  Plaintiff's counsel can certainly cross-examine Dr. Moeller regarding her sworn statements in her affidavit as compared with her sworn statements in her deposition 6 years later.  Defense counsel shall inform the Court prior to trial whether Lance's letter was or was not included in Plaintiff's disciplinary record that was allegedly reviewed by Dr. Moeller.  Until the Court receives more information about Lance's letter, however, the Court

reserves ruling on Plaintiff's motion to exclude Larry Lance's testimony.

### 2.    Patricia Cass' Summary of Departmental Data

Plaintiff asks the Court to exclude Defendant's proposed Exhibits 9 and 103, which are both data reports and statistical analyses of student performance and test results in departmental classes that purport to show that students in Plaintiff's classes performed at a lower level than students in other teachers' classes.  Plaintiff asks the Court to exclude these documents because they are irrelevant and are unreliable.  (Pl. 2d Mot. in Lim. p. 5, doc. # 102; Pl. Obj. p. 3-4, 13-15, doc. # 98.)

These reports are relevant to Defendant's argument that it did not renew Plaintiff's contract for a legitimate, non-discriminatory reason: namely, Plaintiff's poor performance in the classroom.  Evidence that tends to prove that Plaintiff was in fact not as effective an instructor as other faculty members is relevant to this issue.  The DED faculty members who advocated for Plaintiff's removal met with Dr. Moeller and specifically addressed this subject, and when deciding to not renew Plaintiff's contract Dr. Moeller relied on this information from Plaintiff's colleagues.  Plaintiff's arguments that the reports are incomplete and are based on questionable or unverified statistical methods are certainly topics that can be discussed on cross-examination and used for impeachment purposes, but they go to the weight the jury should give these reports, not their admissibility.

Plaintiff is correct, however, that there are additional problems with these proposed Exhibits.  Exhibit 9 is unsigned and undated - there is absolutely no indication of where this document came from, who prepared this report, and whether it is in fact what it claims to be.  This raises authentication concerns.  See FED. R. EVID. 901.  Defendant has implied that Patricia Cass, one of Plaintiff's colleagues, prepared this report: to be admissible, Cass must authenticate this document and lay a proper foundation for admission.  The document is also hearsay, and Cass will have to

establish that it comes within one of the hearsay exceptions.

Exhibit 103 is also troublesome. Exhibit 103 contains a cover sheet indicating that it was prepared and submitted by Cass, ameliorating the authentication concerns accompanying Exhibit 9, but the circumstances described in the cover sheet surrounding this document's creation cast doubt on its reliability. Bland made her initial recommendation to terminate Plaintiff on December 26, 2000. This document, however, was not created until February 14, 2001: after Bland's recommendation, but five days before the Disciplinary Review Committee hearing that reviewed Bland's recommendation. Cass states that she complied this report "[d]ue to the current situation," which indicates that this report was prepared solely in preparation for the Committee hearing in a *post-hoc* attempt to support Bland's recommendation. Although Cass states, at the beginning of the document, that "[t]his is a process that happens every quarter in [the] department" and Defendant argues that it is a business record kept and prepared in the ordinary course of business, if that is true, why wasn't this document produced during the ordinary course of discovery and from Defendant's own files, as opposed to a year after the discovery cutoff date and from Cass' personal files? Why are there no other such reports from previous quarters that would demonstrate that the process happens every quarter, and why was the report complied "due to the current situation?"

As a written assertion that Plaintiff was ineffectual in the classroom, and offered to prove that exact point, this document is inherently unreliable hearsay, see FED. R. EVID. 801(c), and the circumstances surrounding its creation mean that it does not come within Rule 803(6)'s business records exception. A record prepared in anticipation of possible litigation is not a business record. 3 WEINSTEIN'S FEDERAL EVIDENCE § 503.14[5][e] (2d ed. 2004). Furthermore, Defendant's argument does not address the fact that the document was not provided during discovery. Excluding

evidence not provided during discovery is an appropriate sanction.  FED. R. CIV. P. 37(c)(1).

The Court reserves ruling on Exhibit 9 until it has heard Cass' testimony.  Exhibit 103, however, must be excluded, and Plaintiff's Motion as to Exhibit 103 is **GRANTED**.

### 3.    Testimony from Andrea Vicars

Plaintiff argues that the Court should preclude Andrea Vicars, a staff member in Plaintiff's department, from testifying because her testimony would be irrelevant and would contain hearsay, as demonstrated by a letter Vicars sent to one of Plaintiff's supervisors, Nancy Laughbaum.  (Pl. 2d Mot. in Lim. p. 5-6, doc. # 102.)  Defendant responds by arguing that Vicars' testimony would be relevant because it will describe instances in which Plaintiff acted in an unprofessional manner towards Vicars and did not follow departmental policies and procedures, and Vicars relayed that information to Laughbaum, who was one of the departmental faculty that advocated for Plaintiff's removal on the basis of poor conduct towards colleagues.  (Def. Resp. p. 3-4, doc. # 106.)

The Court agrees with Defendant.  Assuming Vicars' testimony is in accordance with the contents of her letter to Laughbaum (Def. Proposed Ex. 43), it is clear that Vicars will testify as to instances in which she personally observed and experienced Plaintiff acting inappropriately towards Vicars herself.  Because Vicars has personal knowledge of these events, her testimony will not be hearsay and Plaintiff will have the opportunity to cross-examine Vicars to probe the veracity of her testimony.  Vicars' testimony will also be relevant, because she communicated her concerns to Laughbaum, who then discussed the subject with the ultimate decisionmaker, Dr. Moeller.  Evidence tending to support one of Defendant's asserted legitimate, non-discriminatory reasons for not renewing Plaintiff's contract, i.e. poor conduct towards colleagues and not following departmental policies and procedures, is certainly relevant to Defendant's defense of this case.  Plaintiff's Motion

14

is **DENIED** as to Vicars' testimony.

### III.     Objections to Proposed Exhibits

The parties have submitted proposed exhibits, and each has filed objections to those proposed exhibits. (Doc. #s 97, 98.) Defendant makes 10 objections to 19 of Plaintiff's 92 proposed exhibits, while Plaintiff has filed 38 objections covering 45 of Defendant's 126 proposed exhibits. While Defendant again states that it "understands these objections will be made and ruled upon during the course of the trial" (Def. Resp. p. 1, doc. # 101), for the reasons stated earlier, see supra section II, the Court prefers to resolve as many objections as possible before trial to make the trial as efficient as possible.

####      A.     Defendant's Objections

#####           1.     *Passim* Objections

Defendant's first two objections state that a number of Plaintiff's exhibits are multiple unrelated documents behind a single tab, and that "numerous" exhibits are excludable hearsay. The Court is unwilling to comb through Plaintiff's entire exhibit book and examine each proposed exhibit to determine if it is, in fact, comprised of unrelated documents without a little more guidance from Defendant as to which exhibits are objectionable. Similarly, the Court is not inclined to inspect each exhibit for inadmissible hearsay in the absence of an objection to a specific document or instance of hearsay. Defendant shall file any objections to specific exhibits within 3 business days from the date of this Order.

Defendant has identified one specific instance of hearsay. Defendant argues that Plaintiff's proposed Exhibit 3, which is composed of various student comments commending Plaintiff for her teaching, is unauthenticated, irrelevant hearsay.

15

Defendant's relevancy objection is without merit. Defendant has argued that it did not renew Plaintiff's teaching contract, in part, because of her poor performance in the classroom and a history of student complaints. Statements from students commending Plaintiff for her teaching are clearly relevant to rebut Defendant's arguments and to demonstrate that they are pretexts for intentional discrimination. Federal Rule of Evidence 401 establishes an extremely low standard for relevance, and these statements meet it.

These written assertions are out of court statements offered to prove that Plaintiff was a competent teacher, however, and as such are hearsay. FED. R. EVID. 801(c). Plaintiff argues that these documents are not hearsay because they are submitted to show that Plaintiff's supervisors had knowledge of positive student comments concerning Plaintiff. The comments may prove that point, but they also tend to establish one of Plaintiff's other arguments, that she was an effective teacher who did not deserve to have her contract not renewed. Asking the jury to accept these documents for the first purpose, while completely ignoring the second purpose, is implausible.

This is not to say that Plaintiff cannot present any evidence establishing the fact that many students complimented Plaintiff's teaching, in order to rebut Defendant's position that a large number of student complaints justified its decision to not renew Plaintiff's teaching contract. Plaintiff has identified evidence from other sources tending to establish its position, such as letters from Defendant's Provost congratulating Plaintiff on her high student evaluation scores and complimentary performance reviews by supervisors. Plaintiff can also testify that she received many compliments from students concerning her teaching ability. It is the *content* of these student statements that presents hearsay problems, however. Establishing the simple fact that students complimented her teaching skills, and that Defendant was aware of those complimentary student

comments, does not require Plaintiff to introduce the acutal substance of those compliments.  Such evidence would go beyond establishing the mere fact that they were made and Defendant's knowledge of them, and would instead tend to be offered for the truth of the matters actually asserted in the statements: that Plaintiff was a good instructor.  If Plaintiff is seeking to introduce the substance of the student comments, the comments must satisfy one of the hearsay exceptions to be admissible.

The first two pages of Exhibit 3 - handwritten notes, one signed and one unsigned, addressed to the Plaintiff - do not appear to fall within any exception to Rule 802's broad exclusion of hearsay. The remainder of Exhibit 3 would appear to come within Rule 803(6)'s exception for records of regularly conducted activity; the documents are handwritten student comments on what appears to be formal student evaluation sheets of the kind usually distributed to students by colleges at the end of an academic semester.  These types of data compilations are typically created and kept in the regular course of a college's business.  <u>See</u> FED. R. EVID. 803(6).  Before excepting such records from the hearsay ban, Rule 803(6) requires "the testimony of the [records'] custodian or other qualified witness, or [] certification that complies with Rule 902(11)," and while Plaintiff does not offer any Rule 902(11) certification to make these records self-authenticating, any one of Defendant's executives, such as Dr. Moeller or Defendant's Provost would be "qualified witnesses" for the purposes of Rule 803(6).  Provided that Plaintiff can present the testimony of a qualified witness, Defendant's objection to Plaintiff's Exhibit 3 is **OVERRULED** as to all but the first two pages.

## 2.    Objection to Exhibits 23-24

Defendant objects that these exhibits "purport to be the same e-mail document but are

separately identified as having different authors."  (Def. Obj. p. 1, doc. # 97.)  Plaintiff's proposed

Exhibit 23 is two emails, the first addressed to "Celeste" with the sender's name blacked out, and

the second from Celeste Bland with the recipient's name blacked out.  Exhibit 24 is the same two

emails, but with the name "John Wallace" handwritten above the sender's and recipient's blacked

out names.

Defendant's objection is well taken and is **SUSTAINED**.  Admitting two copies of the same

emails would be redundant and cumulative, and thus one must be excluded under Rule 403.  The

blacked out names on Exhibit 23, and the handwritten interlineations on Exhibit 24, also raise

authentication concerns.  FED. R. EVID. 901(a).  The Court notes that John Wallace and Celeste

Bland are on both parties' witnesses lists - if Mr. Wallace or Ms. Bland can authenticate these

documents, they then would be admissible.

### 3.    Objection to Exhibits 33, 34, 35, 85, and 88

Defendant argues that Plaintiff's proposed Exhibits 33, 34, 35, 85, and 88 contain personally

identifiable student information, such as names and social security numbers, and that disclosing the

information would violate the Family Educational Rights and Privacy Act of 1974, codified at 29

U.S.C. § 1232g.  Plaintiff agrees that the social security numbers can be redacted, but argues that

she must be able to identify the individuals that complained against her.  (Pl. Resp. p. 2, doc. # 108.)

The Court agrees with Defendant, however, and sees no point in including the students' names.

Which students specifically complained about Plaintiff is not a relevant issue, all that matters is that

some student did.  Defendant's objection is **SUSTAINED**.  Plaintiff must redact all student names,

social security numbers, and other identifying information from these Exhibits.

### 4.    Objection to Exhibit 47

Plaintiff's proposed Exhibit 47 is a cover letter from a fax sent by one of Defendant's employees to, among others, Phil Moots, Defendant's counsel of record.  The "comments" section of the fax cover sheet states that Mr. Moots had requested the employee to fax a document, the Employee Review Panel Decision recommending against terminating Plaintiff, to two of Defendant's executives in preparation for a meeting to discuss the Decision.  Defendant argues that the Exhibit should be excluded because it contains the "outline" of a privileged conversation between Defendant and its counsel.

The Court does not believe that this document falls within the attorney-client privilege.  The *contents* of the ensuing discussion between Mr. Moots and Defendant's executives about how to respond to the Decision, of course, would fall squarely within the attorney-client privilege.  But the facts that Defendant consulted its attorney to discuss the Decision, and that Mr. Moots asked one of Defendant's employees to fax a copy of the Decision in preparation for a meeting, do not constitute confidential communications that implicate the attorney-client privilege.  See 3 WEINSTEIN'S FEDERAL EVIDENCE § 503.14[5][e].  Defendant's objection is **OVERRULED**.

### 5.    Objection to Exhibits 64, 65, 68, 69, 70, 72, 73, 74, and 75

In addition to her Title VII national origin discrimination claim, Plaintiff also brought a Title VII retaliation claim that the Court dismissed on summary judgment.  In the Court's July 2, 2008 Memorandum Opinion and Order ruling on the parties' first motions in limine, the Court granted Defendant's motion to exclude evidence relating to Plaintiff's dismissed retaliation claim (p. 2-3, doc. # 95), because such evidence would not be relevant to Plaintiff's national origin discrimination claim.  See FED. R. EVID. 401, 402.  Defendant now argues that Plaintiff's proposed Exhibits 64, 65, 68, 69, 70, 72, 73, 74, and 75 relate to Plaintiff's retaliation claim, and should be excluded.

19

Defendant is correct that parts of these exhibits do indeed relate to Plaintiff's retaliation claim.  In Exhibit 64, a letter from the Plaintiff to Defendant's president, Plaintiff details numerous complaints she has with how she was treated by Defendant after Defendant made the decision to not renew her teaching contract, and states that she views Defendant's actions as "act[s] of retaliation."  Plaintiff also references the discrimination complaint she filed with the Ohio Civil Rights Commission, and states that Defendant's actions after she filed that complaint are retaliatory.  Similarly, Exhibit 73 makes reference to Plaintiff's Ohio Civil Rights Commission complaint.  This evidence is related to Plaintiff's retaliation claim and irrelevant to her national origin discrimination claim, and Defendant's objection is partially **SUSTAINED**.  Plaintiff's specific references to "retaliation" in Exhibit 64 and any mention of the Ohio Civil Rights Commission complaint, in any exhibit, must be redacted.

The rest of Defendant's objections, however, are not well taken.  These proposed Exhibits describe Defendant's decisions to reassign Plaintiff to non-teaching duties, to remove her from departmental meetings and email and substitute lists, to move her to a different office, to require her to report to different supervisors, and to not review her promotion portfolio.  These decisions were all made in conjunction with and as a result of Defendant's decision to not renew Plaintiff's teaching contract.  Plaintiff was told she would be reassigned to non-teaching duties in the same letter in which she was told her contract would not be renewed (see Def. Mot. Summ. J. app. C ex. B), and when Tim Wagner, Defendant's Executive Director of Human Resources, delivered that letter to Plaintiff, he informed her that she would have to move offices and report to a different supervisor (see id. at app. A).  In Defendant's Motion for Summary Judgment Defendant argued that removing Plaintiff from the departmental meetings email and substitute lists "were elements of the decision

to reassign [Plaintiff] to a non-teaching position[.]"  (Id. p. 18.)  Defendant cannot now argue that this evidence is irrelevant to Plaintiff's national origin discrimination claim.

Similarly, Defendant has repeatedly stated, for example in Plaintiff's proposed Exhibit 69, that its decision to not review Plaintiff's promotion portfolio was based on the fact that Plaintiff's contract would not be renewed.  Evidence relating to this decision is thus not related to any retaliation claim and is relevant to Plaintiff's national origin discrimination claim.  Defendant's objections are partially **OVERRULED**.

### 6.    Objection to Exhibit 84

As noted above when addressing Defendant's Second Motion in Limine, Plaintiff has agreed to withdraw this Exhibit.  Defendant's objection is **SUSTAINED**.

### 7.    Objection to Exhibit 91

Plaintiff's proposed Exhibit 91 is a bill from Plaintiff's psychologist detailing Plaintiff's expenditures on psychotherapy sessions.  Defendant objects to Exhibit 91 on the grounds that psychotherapy expenses are not relevant to Plaintiff's discrimination claim and that the expenses are not compensable.  Defendant's objection, however, is **OVERRULED**.

Defendant is correct that psychotherapy expenses are not relevant to the liability aspect of Plaintiff's claim, but they are relevant to Plaintiff's damages and there is no reason why such damages are not compensable. Section 102 of the Civil Rights Act of 1991 allowed Title VII plaintiffs to recover compensatory damages, see 42 U.S.C. § 1981a, and damages for mental anguish are within the broad scope of compensatory damages.  If Plaintiff can prove that she incurred her psychotherapy expenses as a consequence of Defendant's alleged discrimination, such expenses could lead to an award of compensatory damages.

**B.      Plaintiff's Objections**

**1.      Objection to Exhibit 2**

Defendant's proposed Exhibit 2 is an undated document prepared by Nancy Laughbaum, the acting Chair of the DED and Plaintiff's supervisor, asserting that she reviewed Plaintiff's performance evaluation with Plaintiff and "discussed the attached journal." Plaintiff objects that this document is hearsay, and the Court agrees. The document is an out of court statement offered to prove that Laughbaum reviewed a performance evaluation with Plaintiff, and is clearly hearsay. FED. R. EVID. 801(c). Furthermore, it does not appear to fall within any of Federal Rule of Evidence 803's exceptions to the hearsay rule. Defendant's response argues that many of Plaintiff's objections are baseless because the documents in question are records of regularly conducted activity under Rule 803(6) (the "business records exception"), but Exhibit 2 does not satisfy the business records test. For a document to be admissible under Rule 803(6);

> (1) it must have been made in the course of a regularly conducted business activity;
> (2) it must have been kept in the regular course of that business; (3) the regular
> practice of that business must have been to have made the memorandum; and (4) the
> memorandum must have been made by a person with knowledge of the transaction
> or from information transmitted by a person with knowledge.

United States v. Weinstock, 153 F.3d 272, 276 (6th Cir. 1998). Unlike a dated report or memorandum addressed to a supervisor or "to file" and written on official letterhead or bearing some other indicia of regular business activity, this undated, unaddressed document does not bear any indicia of having been created in the regular course of Laughbaum's activities or that it was kept in the regular course of Defendant's business. Exhibit 2 also mentions an "attached journal," but there is no journal attached to the Exhibit, which further undermines its credibility. Plaintiff's objection is **SUSTAINED**.

### 2. Objection to Exhibits 4 and 5

Exhibit 4 is an email from Kelly Goldenetz, one of Plaintiff's colleagues, to Plaintiff describing a problem with the time for one of Plaintiff's final exams. Exhibit 5 is an email from Goldenetz to Celeste Bland, Plaintiff's supervisor, informing Bland of the problem. Plaintiff argues that these documents are irrelevant hearsay, but the Court does not agree.

The documents are relevant because they relate to following departmental policies and procedures, one of the grounds that the DED faculty discussed with Dr. Moeller when the faculty advocated for Plaintiff's removal. Dr. Moeller has stated that she relied on the information from the departmental faculty, which she described as "compelling," when deciding to not renew Plaintiff's teaching contract (Def. Mot. Summ. J. app. C, doc. # 54), and evidence substantiating the faculty's concerns is relevant to Defendant's asserted legitimate, nondiscriminatory reasons for not renewing Plaintiff's contract. See FED. R. EVID. 401 (broad definition of "relevance").

The documents also are not hearsay. Unlike Exhibit 2, these emails were created and kept in the ordinary course of Defendant's business; it would be regular practice to inform an instructor and her supervisor of a conflict with the scheduled final exam, and Goldenetz had personal knowledge of the events in question, or received the information from someone with personal knowledge. Weinstock, 153 F.3d at 276. As Plaintiff notes, the exhibits do indeed contain statements of what students said, but the Court agrees with Defendant that these statements do not fall within Rule 801(c)'s definition of hearsay because they are not offered for the truth of the matter asserted in the statement. (Def. Resp. p. 2, doc. # 101.) Statements showing the declarant's state of mind, such as knowledge or notice of an act or the declarant's motive for taking a particular action, are not statements offered for their truth and thus are not hearsay. See, e.g., United States

v. Khalil, 279 F.3d 358, 364 (6th Cir. 2002); 3 WEINSTEIN'S FEDERAL EVIDENCE at § 801.11[5]. These students' comments are being offered to show why Goldenetz sent these emails, and admitting them would not be unduly prejudicial. Plaintiff's objections are **OVERRULED**.

### 3. Objection to Exhibit 6

Defendant's proposed Exhibit 6 is an email from Goldenetz to Bland, informing Bland that a student had come to Goldenetz to complain about Plaintiff. Plaintiff argues that this document is irrelevant hearsay. Although the document is relevant because it details a student complaint, one of the topics that the DED faculty discussed with Dr. Moeller prior to Dr. Moeller's decision to not renew Plaintiff's contract, the document contains inadmissible hearsay.

The document itself is a business record that falls within Rule 803(6)'s exception to the hearsay bar, but unlike Exhibits 4 and 5 discussed above, in this case the student's comments are being offered to prove the truth of the matters asserted in the comments - that Plaintiff was an ineffectual instructor and had a poor attitude when dealing with students. The DED faculty also discussed these topics with Dr. Moeller when advocating for Plaintiff's removal, and the comments in Exhibit 6 lend support to the DED faculty's allegations and would tend to show that Plaintiff in fact was ineffectual in the classroom and demonstrated poor conduct towards students. This document does not simply show the faculty's knowledge of a student's complaint or their motivation for petitioning Dr. Moeller. As such, it is inadmissible hearsay. See FED. R. EVID. 801(c); 802.

Even if the comments were not hearsay, or could come within Rule 803(3)'s hearsay exception for statements of a then-existing mental condition, such as intent, plan, or motive, that are used as proof of a later act, see FED. R. EVID. 803(3), the relevant probative force of the statements would be substantially outweighed by the danger of unfair prejudice under Rule 403. As hearsay

these statements are inherently unreliable - these students will not be called to testify and will not be subject to cross-examination to determine the veracity of their comments.  The fact that the content of the students' complaints goes directly to Defendant's arguments that Plaintiff was an ineffectual instructor and had a poor attitude creates a danger that the jury would unfairly credit these hearsay statements.

Attempting to cure such prejudice by instructing the jury to consider the students' complaints only for the purpose of showing their effect on Goldenetz' state of mind, and not for their assertions that Plaintiff was in fact a poor instructor, would require "discrimination so subtle [as to be a] feat beyond the compass of ordinary minds."  Shepard v. United States, 290 U.S. 96, 104 (1933) (Cardozo, J).  If Defendant was really only offering these comments as proof that complaints were made, only evidence showing the bare fact that a complaint was made would be necessary, as opposed to reciting the full content of the complaint.  Plaintiff's objection is **SUSTAINED**.  At trial Goldenetz can testify as to the fact that she personally experienced students coming to her with complaints about Plaintiff to establish the fact that student complaints were in fact made, and can state what she personally did in response to those complaints, but she cannot relate the content of the students' complaints.

### 4. Objection to Exhibit 7

Exhibit 7 is an email from Goldenetz to Bland detailing Plaintiff's absences during 1999, as well as 1) a record of Plaintiff's absences from 2000 to 2001 presumably prepared by Bland; and 2) computer printouts detailing Plaintiff's short term leave usage.  Plaintiff argues that the information is irrelevant, but the Court disagrees because "frequency of absences" is one of the topics that the DED faculty discussed with Dr. Moeller when advocating for Plaintiff's removal, and

as noted, Dr. Moeller relied on the information presented by the DED faculty when deciding to not renew Plaintiff's teaching contract.

Plaintiff also objects to page 2 of the Exhibit, Bland's record of Plaintiff's absences, because Plaintiff argues it is hearsay.  The Court agrees that this document is hearsay that does not fall within any of the Rule 803 exceptions.  The document is not a business record because there is no indication that it was prepared during the ordinary course of business contemporaneously with the events recorded.  See FED. R. EVID. 803(6) (record must be made at or near the time of the event). The only date on the document is a handwritten "Rec'd from Celeste 4/9/07" in the upper right hand corner; the events surrounding Plaintiff's termination occurred during 2000 and 2001.  This is insufficient to come within the Rule 803(6) exception.  Plaintiff's objection is **SUSTAINED** as to page 2 of the Exhibit, but **OVERRULED** as to the remainder.

### 5.     Objection to Exhibit 9

For the reasons discussed in connection with Plaintiff's Motion in Limine, supra section II.B.2, the Court reserves ruling on this Exhibit.

### 6.     Objection to Exhibits 12 and 13

Plaintiff argues that Exhibits 12 and 13 are irrelevant, because Plaintiff "was not removed for the reasons stated in the two documents."  (Pl. Obj. p. 4, doc. # 98.)  The Court, however, disagrees.  Exhibit 12 is a note from Goldenetz to Plaintiff reminding Plaintiff of the proper departmental procedures for finding a substitute teacher, and Exhibit 13 is two copies of a "class count form" asking instructors to note the number of students actually attending their classes, as opposed to the number of students that signed up.  Handwritten notes on each copy indicate that Plaintiff may not have followed this request.  "Compliance with department regulations and

26

requests" is one of the topics that the DED faculty discussed with Dr. Moeller when advocating for Plaintiff's termination, and these documents are relevant to that complaint.  Their probative value may be slight, but Federal Rule of Evidence 401 states that evidence having "any tendency" to establish the existence of a fact is relevant evidence, which is a broad definition of relevance.  FED. R. EVID. 401.  Plaintiff's objections are **OVERRULED**.

### 7.   Objection to Exhibit 20

Defendant's proposed Exhibit 20 is a copy of the confidentiality agreement Plaintiff signed when Defendant hired her.  Plaintiff states that the document is irrelevant, but again the Court disagrees. One of Celeste Bland's reasons for recommending Plaintiff's termination was an incident in the 2000 Winter Quarter where Plaintiff deleted student records.  (Def. Mot. Summ. J. app. D, doc. # 54.)  The confidentiality agreement that Plaintiff signed clearly states that Plaintiff had a duty to not destroy any records.  Although Plaintiff states that deleting the student records was accidental and that it was quickly remedied, this goes to the weight of the evidence, not its relevance. Plaintiff's objection is **OVERRULED**.

### 8.   Objection to Exhibit 21

Plaintiff objects to Defendant's proposed Exhibit 21, which is a memorandum from Goldenetz to the DED faculty setting forth departmental procedures, because Plaintiff argues that it is not relevant.  As noted, the departmental faculty advocated for Plaintiff's removal on the basis, in part, of her alleged failure to follow departmental policies and procedures, and any document setting forth those procedures would be relevant.  Plaintiff's objection is **OVERRULED**.

### 9.   Objection to Exhibit 22

Exhibit 22 is a memorandum from Goldenetz and another instructor, Beth Barnett, to Dr.

Kevin May, the chair of the DED when Plaintiff was initially hired.  In the memorandum, Goldenetz and Barnett detail a long list of complaints about Plaintiff, including not complying with departmental rules and her "poor attitude within the department" and conflict with staff members. Plaintiff objects to the document on the grounds of relevancy and hearsay, and also notes that the document was not provided during discovery and was only recently disclosed from Goldenetz' personal files.

While the Court has stated that evidence relating to the topics that the DED faculty discussed with Dr. Moeller would be relevant, in this case the fact that Dr. May was not involved at all in the decision to not renew Plaintiff's contract undermines the document's relevance.  Plaintiff is also correct that the document contains a considerable amount of hearsay within hearsay, such as reports of what other faculty and staff members said about Plaintiff, that does not fall within any of the hearsay exceptions.  The Court rejects Defendant's arguments that the statements are offered to prove the declarant's state of mind for the same reasons as discussed in connection with Plaintiff's objection to Exhibit 6.  See supra section III.B.3.  The fact that this document was not provided during the normal course of discovery, but was only provided after the close of discovery and from Goldenetz' personal files, is further support for the Court's conclusion that the Exhibit should be excluded.  See FED. R. CIV. P. 37(c)(1) (if a party fails to disclose information, the party may not use that information at trial).  Plaintiff's objection is **SUSTAINED**.

### 10.    Objection to Exhibits 32 and 33

Defendant's proposed Exhibit 32 is a written complaint about Plaintiff from a student to Goldenetz, and Exhibit 33 is Goldenetz' written record of a subsequent conversation she had with the student.  Plaintiff objects to these documents on hearsay grounds, and the objection is well-taken.

The student's comments that Plaintiff has a poor classroom demeanor are being offered to support Defendant's argument that it was justified in not renewing Plaintiff's contract in part because of Plaintiff's poor conduct towards students; in other words, the comments are being offered for the truth of the matter asserted in the comments, and as such are hearsay. FED. R. EVID. 801(c). Defendant's arguments that the statements are offered to show their impact on Goldenetz' state of mind are unpersuasive because 1) if the comments were being offered solely to prove that Goldenetz knew that students complained about Plaintiff, there would be no need to recite the substance of the complaint, only the fact that a complaint was made; 2) there is no evidence that Goldenetz took any action based on the student's complaints; if the comment is offered to show intent or motive, there must be a corresponding behavior based on the comment. The Court also notes that Plaintiff states that these documents were not provided during the ordinary course of discovery, but rather were disclosed a year later and from Goldenetz' personal files. This further undermines any credibility these hearsay statements may have carried. As the Court stated when discussing Plaintiff's objections to Exhibit 6, see supra section III.B.3, at trial Goldenetz can testify that on the date in question she personally experienced a student come to her to complain about Plaintiff, but the substance of that complaint is inadmissible unless Defendant calls the student who actually complained as a witness. Plaintiff's objections are **SUSTAINED**.

### 11. Objection to Exhibit 36

Plaintiff objects to Defendant's proposed Exhibit 36, which contains excerpts from Goldenetz' daily log from July to August 1998, on hearsay grounds, and the Court agrees. Although Defendant argues that the document is a business record, the document appears to be more similar to a personal diary than a record regularly created in the course of Defendant's business. See FED.

R. Evid. 803(6); Weinstock, 153 F.3d at 276.  The fact that this document was produced after the discovery cutoff date from Goldenetz' personal files reinforces this conclusion.  Plaintiff further points out that Defendant has in fact produced two different versions of this document, one in May 2008 and one in June 2008, which undermines the reliability of either document.  Plaintiff's objection is **SUSTAINED**.

### 12.    Objection to Exhibits 37 and 38

Defendant's proposed Exhibit 37 is a memorandum from Defendant's provost to all faculty members outlining the procedures for filling out and submitting midterm progress report scan sheets, and Exhibit 38 is an email from one of Defendant's staff members indicating that Plaintiff did not submit her scan sheets in July 1998.  Plaintiff objects that the documents are irrelevant, but as the Court has previously pointed out, Defendant has asserted, as a legitimate non-discriminatory reason for its actions, that Plaintiff's contract was not renewed in part because she did not follow Defendant's policies and procedures, and documents tending to support Defendant's arguments are relevant.  Plaintiff's objections are **OVERRULED**.

### 13.    Objection to Exhibit 41

Plaintiff objects to Defendant's proposed Exhibit 41, which is a memorandum from Laughbaum to Plaintiff regarding absences, on the ground that the document is irrelevant.  The DED faculty, however, discussed Plaintiff's absences with Dr. Moeller when they advocated for Plaintiff's removal, Dr. Moeller relied on that information when making the ultimate decision  to not renew Plaintiff's contract, and Defendant has argued that "frequency of absences" is a legitimate, non-discriminatory reason for that action.  The document is relevant, and Plaintiff's objection is **OVERRULED**.

### 14.     Objection to Exhibit 42

Plaintiff makes hearsay and relevancy objections to Defendant's proposed Exhibit 42, which is a memorandum from Goldenetz to Laughbaum describing an instance in which a student in one of Plaintiff's classes carried his or her own test from Plaintiff's class to the testing center, in violation of departmental policies.   The document is relevant because, as discussed above in connection with Plaintiff's objection to Exhibits 37 and 38, it describes a procedural violation.

However, it is hearsay.   The document states first that a testing assistant, "LaTonya," observed the student enter the testing center, then that LaTonya brought the matter to "Michelle's" attention.  Presumably Michelle brought the matter to Goldenetz' attention, but this is not clear from the document.  The business records exception to the hearsay rule requires that the record be made by an individual with personal knowledge of the events in question, see FED. R. EVID. 803(6), and in this case there is no clear indication of how Goldenetz learned of this incident.   See also 3 WEINSTEIN'S FEDERAL EVIDENCE § 803.08[4].   Even if the document could be considered a valid business record, LaTonya and Michelle's statements are hearsay within hearsay, and any probative value they may have would be substantially outweighed by the danger of unfair prejudice of presenting inherently unreliable hearsay evidence to the jury.   See FED. R. EVID. 403.  Plaintiff's objection is **SUSTAINED**.   At trial Goldenetz can testify that on the date in question she had personal knowledge of an individual relating a concern about Plaintiff, but cannot testify as to the substance of that concern.

### 15.     Objection to Exhibit 43

Defendant's proposed Exhibit 43 is a memorandum from Andrea Vicars, an office assistant in the DED, to Laughbaum detailing numerous complaints against and problems with Plaintiff.

Plaintiff makes relevancy, hearsay, and prejudice arguments, and the Court finds that the document is hearsay.

This document is hearsay that does not come within Rule 803(6)'s business records exception primarily because it does not appear to have been made *contemporaneously* with the events described.  See FED. R. EVID. 803(6) (record must be "made at or near the time" of the event recorded).  Vicars' letter does start by reciting a recent event, but that is not the focus of her letter to Laughbaum.  Vicars uses this recent event as an opportunity to air a whole history of complaints about and problems with Plaintiff, and there is no indication that any of these events occured any time close to the date Vicars prepared her letter.  There is no business purpose for airing these grievances long after the fact; to qualify as a legitimate business record, the report must be made contemporaneously with the event in question.  Vicars' laundry list of past complaints does not qualify.  Furthermore, Vicars will be available to testify at trial as to her personal past experiences and interactions with Plaintiff, which makes this document repetitious.  Plaintiff's objection is **SUSTAINED**.

### 16.    Objection to Exhibit 44

Plaintiff makes a relevancy objection to Defendant's proposed Exhibit 44, which is a memorandum from Goldenetz to Plaintiff, in which Goldenetz informs Plaintiff that her attendance sheets and syllabus for a fall 1998 class do not conform to departmental policies.  This information is relevant to Defendant's asserted legitimate, non-discriminatory reason for deciding to not renew Plaintiff's teaching contract, i.e. failure to follow department policies and procedures.  Plaintiff's objection is **OVERRULED**.

### 17.    Objection to Exhibit 47

Defendant's proposed Exhibit 47 is a memorandum from Goldenetz to DED faculty members outlining grading procedures. Plaintiff's relevancy objection is **OVERRULED** because this document sets forth some of the procedures and policies that Defendant alleges Plaintiff violated, thus providing an asserted non-discriminatory reason for not renewing Plaintiff's contract.

### 18. Objection to Exhibit 48

Exhibit 48 is a corrected version of a test Plaintiff gave to one of her students. Plaintiff objects that the document is irrelevant, but when viewed in connection with Exhibit 47, the Court finds that the document is relevant. Exhibit 47, outlining grading procedures, specifically directs instructors to not grant partial credit for answers, and the corrections on Exhibit 48 indicate that Plaintiff did in fact grant students partial credit for answers. This would tend to show that Plaintiff violated the departmental grading policy, which relates to one of Defendant's asserted legitimate, non-discriminatory reasons for not renewing Plaintiff's contract - not following departmental policies and procedures.

Plaintiff also objects to the fact that the document was not provided during discovery, and was only recently produced from Goldenetz' personal files. The Court finds this objection persuasive. The fact that the test was not kept in Defendant's files, but instead was produced from another instructor's personal file, raises questions as to the authenticity and reliability of this document; why did Goldenetz, and not Plaintiff or the department, have this test in her files? There is no indication that this document is really what it purports to be. If Defendant can lay a proper foundation for the Exhibit it would be relevant and admissible, but absent such a foundation the Court conditionally **SUSTAINS** Plaintiff's objection.

### 19. Objection to Exhibit 49

Plaintiff makes relevancy and hearsay objections to Defendant's proposed Exhibit 49, a memorandum from Goldenetz to Laughbaum in which Goldenetz asserts that Plaintiff did not follow DED grading procedures, specifically with respect to granting partial credit.  As discussed above in connection with Plaintiff's objections to Exhibits 47 and 48, the document is relevant. Additionally, it is not hearsay because it falls within Rule 803(6)'s business records exception for the reasons discussed in connection with Plaintiff's objection to Exhibit 43.  There is no hearsay within hearsay problem, because Goldenetz is describing her personal observations of Plaintiff's grading practice, not what someone else told her about Plaintiff's grading.  Plaintiff's objection is **OVERRULED**.

### 20.    Objection to Exhibit 50

Defendant's proposed Exhibit 50 is a memorandum from Laughbaum to Goldenetz, again discussing Plaintiff granting partial credit when grading.  Plaintiff again makes relevancy and hearsay objections.  Plaintiff's relevancy objection is not well-taken for the reasons discussed above, and Plaintiff's hearsay objection similarly does not have merit.  The document itself is a business record within Rule 803(6)'s hearsay exception, and there is no hearsay within hearsay problem. Although Laughbaum does relate statements that Plaintiff allegedly made to her, these statements are not hearsay because they are admissions of a party-opponent.  See FED. R. EVID. 801(d)(2). Plaintiff's objection is **OVERRULED**.

### 21.    Objection to Exhibit 52

Defendant's proposed Exhibit 52 is Plaintiff's 1998 tax return.  Plaintiff states that her social security number should be redacted from the Exhibit, and the Court agrees.  Plaintiff's objection is **SUSTAINED**.

### 22.    Objection to Exhibit 53

Plaintiff makes relevance and hearsay objections to Defendant's proposed Exhibit 53, an email from Goldenetz to Laughbaum stating that Goldenetz had to cover one of Plaintiff's classes because Plaintiff could not make it, and that Plaintiff had missed faculty meetings. The document is relevant because it relates to Plaintiff's attendance at classes and meetings, both of which were topics that the DED faculty discussed with Dr. Moeller. Although the probative value of the document appears to be fairly low, Rule 401 establishes a very broad definition of relevant evidence, and this document meets it.

Plaintiff's hearsay objection is not well-taken, with one exception. With the proper foundation from Goldenetz, the document would fall within Rule 803(6)'s exception for business records because it appears to be a regularly prepared record of a business activity: informing a supervisor of an incident with a colleague. The document also mostly relates events within Goldenetz' personal knowledge, which avoids hearsay within hearsay and undue prejudice concerns because Goldenetz will be available for cross-examination. The first three lines of the email, however, do indeed contain hearsay within hearsay, as Goldenetz describes what another faculty member told her about the faculty member's conversation with Plaintiff. If this information is redacted up to the point that Goldenetz begins to describe her own conversation with Plaintiff, the document would be admissible. Plaintiff's objection is **OVERRULED**, with the exception of the first three lines.

### 23.    Objection to Exhibit 54

Exhibit 54 is a memorandum from Goldenetz to Laughbaum stating that Plaintiff did not submit a list of enrolled students for two quarters, which affected the department's budget. Plaintiff

argues that it is not relevant, but noncompliance with departmental policies, procedures, and requests is one of Defendant's asserted legitimate, non-discriminatory reasons for Dr. Moeller's decision to not renew Plaintiff's contract, and the departmental faculty discussed this topic with Dr. Moeller when advocating for Plaintiff's removal. The document is relevant, and Plaintiff's objection is **OVERRULED**.

### 24. Objection to Exhibit 60

Defendant's proposed Exhibit 60 is Plaintiff's application for a position in one of Defendant's other academic departments. Plaintiff makes a relevance objection. Although Rule 401 sets a low bar for relevance, the Court agrees with Plaintiff that it is difficult to see how this document has any tendency at all to make more or less probable the existence of a fact material to either Plaintiff's claim or Defendant's defenses. The simple fact that Plaintiff applied to switch departments, for reasons unknown, has no bearing on any of the issues in this case. Plaintiff's objection is **SUSTAINED**.

### 25. Objection to Exhibit 62

Plaintiff makes relevance and hearsay objections to Exhibit 62, an email from Laughbaum to "TERNY" or "Tom," presumably Tom Erney, Defendant's Director of Instructional Services, describing Plaintiff's absences from class due to illness, Plaintiff's failure to find substitute teachers herself, and a heated discussion between Plaintiff and another faculty member. Plaintiff's relevancy objection is not well-taken because absences and complying with departmental policies with regards to substitute teachers were part of Dr. Moeller's reasons for not renewing Plaintiff's contract, but the document contains a considerable amount of hearsay in the form of other faculty members' statements about their interactions with Plaintiff. Plaintiff's objection is **SUSTAINED**.

### 26.  Objection to Exhibit 63

Defendant's proposed Exhibit 63 is a memorandum from Larry Lance, the chairman of Defendant's mathematics department, to Tom Erney, describing Plaintiff's performance when teaching a class in Lance's department in 1999.  The Court has already stated in section II.B.1 that it will reserve ruling on whether to admit Lance's testimony.  The Court can, however, rule on the admissibility of this Exhibit, and the Court agrees with Plaintiff that it should be excluded.  The letter is almost entirely composed of hearsay in the form of student complaints about Plaintiff to Lance.  For the reasons stated in connection with Plaintiff's Objection to Exhibit 6, see supra section III.B.3, this evidence is inadmissible.  Plaintiff's objection is **SUSTAINED**.  Should the Court accept Lance's testimony, he can testify that students made complaints to him about Plaintiff and that he wrote a letter to Tom Erney relaying those complaints, but Lance cannot recite the content of those complaints.

### 27.  Objection to Exhibit 68

Plaintiff makes relevance and hearsay objections to Defendant's proposed Exhibit 68, a memorandum from Tom Erney to Erv Zitlow, Defendant's Director of Human Resources, that contains a log, recorded by Laughbaum, of numerous issues that faculty members raised about Plaintiff. Plaintiff's relevance objection is not well-taken because it contains information that would tend to bolster Defendant's asserted legitimate non-discriminatory reason for not renewing Plaintiff's contract, but Plaintiff is correct to object on hearsay grounds.  The document itself is entirely hearsay because it does not come within Rule 803(6)'s business records exception, or any other hearsay exception.  To satisfy Rule 803(6), the "regular practice of the business activity [must have been] to make the" record.  FED. R. EVID. 803(6).  In this memorandum, Erney clearly states

that Laughbaum prepared the log at his request, not as a matter of regular practice. "Memoranda that are . . . unique do not qualify as business records," 3 WEINSTEIN'S FEDERAL EVIDENCE § 803.08[2], and likewise this unique memorandum created at Erney's request does not satisfy Rule 803(6).

Even if it could be considered a business record, however, the log is rife with hearsay statements from multiple members of Plaintiff's department, as well as complaints from students. These statements are not being offered to show their effect on any individual or to reveal a state of mind, but are being offered to prove their contents. Any probative weight that these statements may have on an individual's state of mind, moreover, would be substantially outweighed by the danger of unfair prejudice to Plaintiff. FED. R. EVID. 403. Admitting such unreliable evidence would be unduly prejudicial to Plaintiff when the vast majority of the hearsay declarants are members of Defendant's faculty and will be available to testify and be cross-examined at trial as to their personal experiences with Plaintiff. Plaintiff's objection is **SUSTAINED**.

### 28. Objection to Exhibit 70

Defendant's proposed Exhibit 70 is Plaintiff's 1999 tax return, and Plaintiff argues that her social security number must be redacted. The Court agrees, and Plaintiff's objection is **SUSTAINED**.

### 29. Objection to Exhibit 77

Plaintiff makes relevance and hearsay objections to Exhibit 77, an email from Patricia Cass, an instructor in the DED, to Bland. Cass relates the substance of a student complaint made about Plaintiff. Plaintiff's relevance objection is not well-taken, but the substance of the student's complaint is inadmissible hearsay for the reasons stated in above in connection with Plaintiff's

objection to Exhibit 6, see supra section III.B.3. Plaintiff's objection is **SUSTAINED**. At trial, Cass may testify that on the date in question a student came to her with a complaint about Plaintiff, but Cass may not relate the content of that statement.

### 30. Objection to Exhibit 86

Exhibit 86 is an email conversation between Plaintiff and Goldenetz, in which Goldenetz criticizes Plaintiff's statements that she was not available to be a substitute teacher on the grounds that it is a departmental request and demonstrates a poor attitude towards colleagues. Plaintiff argues that this document is not relevant, but these topics were discussed with Dr. Moeller by the departmental faculty and formed part of the basis for Dr. Moeller's decision to not renew Plaintiff's contract. Plaintiff's objection is **OVERRULED**.

### 31. Objection to Exhibit 91

Defendant's proposed Exhibit 91 is an email from Bland to Plaintiff, informing Plaintiff of several errors in her class syllabus. Plaintiff argues that the document is not relevant because, when it was made, Bland had already decided to recommend that Plaintiff be terminated. The Court agrees; the email is dated 1/5/01 and Bland recommended Plaintiff's termination on 12/26/00 and listed specific instances as the reasons for the recommendation. The issues described in this email were not a part of Bland's recommendation and were not issues that the DED faculty discussed with Dr. Moeller, and the email is thus irrelevant to Dr. Moeller's decision to not renew Plaintiff's contract. Plaintiff's objection is **SUSTAINED**.

### 32. Objection to Exhibit 94

Defendant's proposed Exhibit 94 is an email, dated 1/16/01, from Holly Finnegan, one of Plaintiff's colleagues, to Bland describing an incident in the fall of 2000 in which Plaintiff allegedly

slammed a door in a student's face. Plaintiff makes relevancy and hearsay objections, and both are well-taken. Bland recommended Plaintiff's termination in late December 2000 and listed very specific reasons supporting that recommendation. This email was sent to Bland in January 2001, after Bland recommended Plaintiff's termination, but describes an incident that took place in the fall of 2000, before Bland made her recommendation. Although the alleged incident took place before Bland made her recommendation, Bland did not mention it in her recommendation and apparently did not learn of it until after she made her recommendation, which makes this email irrelevant to Bland's decision.

Although Finnegan was a part of the group of DED faculty that discussed student complaints about Plaintiff with Dr. Moeller and the document could thus plausibly be relevant to the ultimate employment decision, any probative weight this email may have is greatly outweighed by the danger of unfair prejudice the email creates. The document is completely hearsay, and does not come within any exception. It is not a business record because it was not made at or near the time of the event, and because it was not made as a matter of regular practice. The subject line of the email is "Requested Report" - if Bland specifically requested that Finnegan make this report, possibly in anticipation of litigation, then it is not a regular business record. Furthermore, the student's comments contained within the document are hearsay within hearsay. The circumstances surrounding the document's late creation also undermine any credibility the document may have. Admitting unreliable hearsay evidence would be unduly prejudicial. Plaintiff's objection is **SUSTAINED**.

### 33. Objection to Exhibit 97

Plaintiff makes relevance and hearsay objections to Defendant's proposed Exhibit 97, an

email from Karen Gee, a secretary in Plaintiff's department, to Bland, in which Gee relates a phone conversation she had with Plaintiff. Plaintiff's relevancy objection is not persuasive because Gee sat in on meetings between Plaintiff and Bland that formed part of the basis for Bland's recommendation to remove Plaintiff and Gee's statements relate to those meetings, but Plaintiff's hearsay objections are well-taken. The document itself is hearsay because this type of personal email is unlike the memoranda and official emails that fall within the business records exception, and it also contains a considerable amount of hearsay within hearsay in the form of Plaintiff's alleged statements to Gee. Plaintiff's objection is **SUSTAINED**.

### 34. Objections to Exhibits 99 and 100

Defendant's proposed Exhibits 99 and 100 are two memoranda dated February 14, 2001, one from Goldenetz and one from Beth Barnett, an instructor in the DED, to Bland in which Goldenetz and Barnett describe an incident involving Plaintiff's absences, allegedly inappropriate behavior towards colleagues, and alleged failure to follow departmental procedures that occurred on December 1, 2000. Plaintiff makes relevance and hearsay objections, and the Court finds those objections persuasive. These documents were created, apparently at Bland's request, after Bland made her decision to recommend Plaintiff's termination. This retroactive attempt to document incidents justifying Bland's recommendation carry no probative weight, and the documents are also hearsay that do not fall within any hearsay exception because they were not prepared contemporaneously with the events in question. See FED. R. EVID. 803(6). Exhibit 99 was also not provided during discovery, and was only recently produced from Goldenetz' personal files. Plaintiff's objections are **SUSTAINED**.

### 35. Objection to Exhibit 103

For the reasons discussed in connection with Plaintiff's Motion in Limine, <u>supra</u> section II.B.2, Plaintiff's objection to this Exhibit is **SUSTAINED**.

### 36.    Objection to Exhibit 105

Defendant's proposed Exhibit 105 is a letter addressed "to whom it may concern" from an unnamed student, dated February 19, 2001, that describes multiple complaints against Plaintiff. Plaintiff makes relevancy and hearsay objections.  Although the document could be relevant, Plaintiff is correct that it is entirely inadmissible hearsay.  For all the reasons stated in connection with Plaintiff's objections to Exhibit 6, <u>see</u> <u>supra</u> section III.B.3, and for the additional reason that this document was not produced during discovery, Plaintiff's objection is **SUSTAINED**.

### 37.    Objections to Exhibits 123-126

Exhibits 123-126 are Plaintiff's tax returns.  Plaintiff argues that her social security numbers must be redacted, and the Court agrees.  Plaintiff's objections are **SUSTAINED**.

## IV.    Conclusion

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Second Motion in Limine (doc. # 100), and **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Second Motion in Limine (doc. # 102).  Defendant's Objections are **SUSTAINED IN PART** and **OVERRULED IN PART** (doc. # 97), and Plaintiff's Objections are **SUSTAINED IN PART** and **OVERRULED IN PART** (doc. # 98).

**IT IS SO ORDERED**.

Date: August 12, 2008                               **/s/ John D. Holschuh**
                                                    John D. Holschuh, Judge
                                                    United States District Court

42
